***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback. The appealing party has shown good ground to reconsider the evidence. The Full Commission affirms in part, and reverses in part, the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement dated January 13, 2005 and at the hearing before the Deputy Commissioner, as:
 STIPULATIONS *Page 2 
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. On June 6, 2001, the employer-employee relationship existed between the defendant-employer and the plaintiff-employee in North Carolina.
3. American Home Assurance c/o AIGCS was the carrier on the risk at the time of the injury.
4. The plaintiff's claim was accepted as compensable pursuant to an IC Form 60 and she was paid temporary total disability benefits from June 6, 2001, through May 10, 2004, at a rate of $213.34, based on an average weekly wage of $320.00.
5. The defendants contend, and the plaintiff denies that the average weekly wage upon which benefits have been paid is incorrect.
6. The plaintiff contends, and the defendants deny, that the plaintiff is entitled to compensation for an injury to her knee that occurred at the time of her accident on June 6, 2001.
7. Documents stipulated into evidence include the following:
 a. Stipulated Exhibit #1 — IC Forms and Pleadings
 b. Stipulated Exhibit #2 — Plaintiff's medical records
 c. Stipulated Exhibit #3 — Plaintiff's unofficial transcript from North Carolina A T State University
 d. Stipulated Exhibit #4 — Superior Court Order Determining the Amount of Workers' Compensation Lien, dated October 16, 2003.
 e. Stipulated Exhibit #5 — Printout of payments made to the plaintiff on this claim
 8. Exhibits admitted into evidence include the following: *Page 3 
 a. Plaintiff's Exhibit #1 — Letter dated September 24, 2001 from the plaintiff's counsel to Shelia Ward with Concentra Managed Care, Inc.
 b. Plaintiff's Exhibit #2 — New Hire Payroll Input for the plaintiff as office assistant, regarding a date of hire of May 17, 2001
 c. Defendant's Exhibit #1 — Letter dated May 17, 2001 from Jeff McLean to the plaintiff regarding a job offer
 ***********
Based upon the credible evidence of record and reasonable inferences drawn therefrom, the Full Commission finds as fact the following:
 FINDINGS OF FACT
1. At the time of hearing before the Deputy Commissioner, the plaintiff was 23 years old and had recently earned a Bachelor of Science degree in Industrial Engineering from the North Carolina Agricultural and Technical State University (NC A T). Prior to her employment with the defendant-employer, the plaintiff had work experience as a collections agent and a warehouse worker.
2. The plaintiff began attending college at the University of North Carolina at Greensboro in the fall semester of 1999 and completed one year of courses. She then took time off to give birth to her child. The plaintiff returned to school at NC A T beginning in January 2001 and completed the spring semester.
3. Following the spring semester, the plaintiff applied for a position as an office assistant at an apartment complex for the defendant-employer. She began work on May 17, 2001. Although the job was stated to be temporary in nature, the plaintiff intended to continue the job as long as possible. The plaintiff's plan was to attend college and work full-time, as well *Page 4 
as care for her child, and she intended to arrange her school classes so that she could continue working a full-time position.
4. The plaintiff's job duties with the defendant-employer included collecting rent, posting notices, making back deposits and cleaning the leasing office. The plaintiff periodically ran errands in her vehicle as part of her job duties. She earned $8.00 per hour, or $320.00 per week.
5. The plaintiff sustained a compensable injury by accident on June 6, 2001, when she was driving her vehicle in the course and scope of her employment to make a bank deposit for the defendant-employer. On that date, the plaintiff was struck by another vehicle as she was exiting the apartment complex. The plaintiff filed a third-party action against the driver of the other vehicle and was paid $25,0000.00 to resolve the claim. The plaintiff also filed an underinsured motorist claim with the carrier of the vehicle she was driving, which was owned by another individual. As a result of the underinsured claim, the plaintiff collected an additional recovery of approximately $12,000.00.
6. The defendants accepted the plaintiff's claim for injuries to her left femur, pelvis, and head as compensable pursuant to an I.C. Form 60, and paid the plaintiff temporary total disability benefits in the amount of $213.34 from June 6, 2001, through May 12, 2004.
7. Following the accident, the plaintiff was transported to Moses Cone memorial Hospital by EMS, where she was treated for a fracture to her left femur, a fractured pelvis and a head trauma. She remained in the hospital through June 12, 2001, and during this time she underwent a surgical open reduction and internal fixation of the left femur performed by Dr. Daniel F. Murphy, an orthopedist. *Page 5 
8. After being released from the hospital, the plaintiff continued post-surgical care with Dr. Murphy. Sheila Ward, RN, BSN, CCM provided medical case management services to coordinate medical treatment on behalf of the plaintiff. The plaintiff repeatedly told Ms. Ward that she did not intend to work following her recovery, and instead wanted to attend school full-time. Although the plaintiff denied making these statements, the Full Commission finds the testimony of Ms. Ward to be credible.
9. During her recovery, the plaintiff initially ambulated with the use of crutches, followed by the use of a walker. She also underwent physical therapy, including exercises to strengthen her quadriceps. Although the plaintiff complained of some knee instability, such complaints were short-lived and resolved after physical therapy.
10. The plaintiff also complained of blurred vision and was seen by an ophthalmologist, Dr. Kathryn Hecker, in July 2001. Dr Hecker diagnosed the plaintiff with convergence insufficiency with associated blurred vision and photophobia. The plaintiff was instructed to perform eye exercises, and did not experience any long-term difficulties with blurred vision.
11. During her recovery, the plaintiff returned to college, taking a few courses beginning in January 2002. She continued to receive temporary total disability benefits.
12. The plaintiff also complained of memory problems and cognitive difficulties following the accident. She was seen by Dr. Jeffrey Schmidt in March 2002, who documented a small left frontal lobe hemorrhage and recommended formal neuropsychological testing. Dr. Schmidt noted no work restrictions. The recommended neuropsychological testing was completed by Dr. Michael Zelson, a clinical neuropsychologist, on April 1 and 4, 2002. Dr. Zelson found that the plaintiff did not have neuropsychological impairment relative to the normal *Page 6 
population, and she demonstrated an above-average intellectual level. However, compared to plaintiff's estimated pre-injury level of functioning, Dr. Zelson speculated that the plaintiff exhibited a mild reduction in her ability to learn and consolidate new information. Dr. Zelson did not impose any work restrictions on the plaintiff.
13. The plaintiff returned to Dr. Schmidt on May 31, 2002, at which time he released her from his care, imposing a two percent (2%) permanent partial disability rating relative to her post-concussion syndrome. No work restrictions were noted in his report.
14. As to her leg injury, Dr. Murphy released the plaintiff from his care on March 19, 2002, with a fifteen percent (15%) permanent partial disability rating to the left lower extremity. No work restrictions were imposed and, according to Dr. Murphy, the plaintiff was fully capable of returning to her job as an office assistant.
15. The plaintiff was released with no work restrictions by March 19, 2002. The plaintiff was aware that she had no work restrictions, yet she made no effort to locate employment. The plaintiff conducted no reasonable job search in the two years after she was released with no restrictions. The Full Commission finds that the plaintiff's failure to search for employment was not reasonable or justified.
16. After being released from care, the plaintiff returned to school full-time, attending classes during all semesters including the summer. During this time, the plaintiff felt she was physically and mentally capable of working and returning to a job as an office assistant, but instead elected to attend college on a full-time basis through December 2004.
17. The Full Commission finds that the plaintiff was fully capable of earning the same wages she earned at the time of the accident by March 19, 2002, when she was released by Dr. Murphy. Prior to the injury, the plaintiff intended to care for her child, work, and attend *Page 7 
school. The plaintiff could have returned to this same set of circumstances after March 2004, but failed to seek employment despite the absence of restrictions. While plaintiff could have earned the same wages that she earned at the time of the accident, she instead chose to attend school full-time. Though the plaintiff desired to attend college to advance her education, this factor did not prevent her from earning the same wages she earned at the time of the accident, a time during which she had already commenced the pursuit of a college degree.
18. The defendants filed a Form 24 application on September 10, 2002. Contrary to her testimony at the hearing before the Deputy Commissioner, the plaintiff claimed in the response to the Form 24 application that she had not been released to full duty work. It is clear from the record that by September 2002, the plaintiff was aware that she had been released to work with no restrictions. Thus, the Full Commission finds that Form 24 application to terminate benefits, filed on September 10, 2002, was improvidently denied by Special Deputy Order of January 31, 2003.
19. After the Form 24 application was denied, vocational assistance was offered to the plaintiff by Scott Perry, BS, CDMS, ORP. Mr. Perry was the only vocational expert to testify at the hearing before the Deputy Commissioner. Mr. Perry's testimony that the plaintiff told him that she had no time to work is found to be credible.
20. Mr. Perry identified several available positions that were suitable for the plaintiff, including jobs as a leasing agent at an apartment complex, receptionist, office assistant, customer service representative, collections agent, medical records coordinator, and data entry clerk. These jobs paid between $8.00 and $10.00 per hour, and did not require the plaintiff to have obtained a college education. The plaintiff failed to apply for any of the jobs. The Full Commission finds that the vocational services offered by the defendants were reasonable, the *Page 8 
plaintiff's failure to cooperate was in direct non-compliance with the January 31, 2003 Order of the Commission compelling cooperation. Thus, the Full Commission finds that the plaintiff's refusal to search for employment or apply for these jobs was unjustified.
21. During the vocational rehabilitation process, the plaintiff returned to Dr. Murphy complaining of pain in her left knee following bowling activities at school. Dr. Murphy ordered an MRI of the left knee, which showed a chondral abnormality, and surgery was recommended and performed on December 15, 2003. The plaintiff was unable to work four weeks following the surgery.
22. Dr. Murphy testified, and the Full Commission finds as fact, that the June 6, 2001 automobile accident "for the most part caused, certainly contributed to, and most assuredly [was] the primary causation for the need of surgery and further treatment" of the left knee condition.
23. Following the knee surgery, Dr. Murphy assigned an additional ten percent (10%) permanent partial disability rating. Dr. Murphy testified, and the Full Commission finds as fact, that the combined total permanent partial disability rating for the left lower extremity, including the femur fracture and the knee surgery, was twenty-two and one-half percent (22 ½ %).
24. After the surgery, the plaintiff continued in her failure to cooperate with vocational rehabilitation efforts. The Full Commission finds that her refusal to cooperate constituted an ongoing violation of the January 31, 2003 Order of the Commission compelling her to cooperate with vocational efforts.
25. In May 2004, the plaintiff accepted a summer internship in Michigan paying $3,500.00 per month, substantially more than she was earning as of the date of the accident. Temporary total disability benefits were, thus, properly terminated on May 12, 2004. The *Page 9 
plaintiff returned to college to complete her final semester in the fall of 2004. She obtained part-time employment with American Express earning $15.00 per hour, twenty hours per week. The plaintiff was able to maintain this employment while attending school and caring for her child, thus, demonstrating that she could have done so in March 2002 after being released with no restrictions. As of the date of hearing before the Deputy Commissioner, the plaintiff was working full time, earning $17.00 per hour and attending post-graduate studies full time to attain an MBA.
26. The Full Commission finds there to be insufficient evidence upon which to find that plaintiff was disabled after March 19, 2002, except during the four weeks following the December 15, 2003 surgery. The plaintiff chose not to work and failed to cooperate with vocational rehabilitation. She testified that her plan prior to her injury was to attend school, work full time, and care for her child. Following the plaintiff's March 19, 2002 release by Dr. Murphy to return to work with no restrictions, the plaintiff could have continued with her plan to work while attending school and caring for her child. The Full Commission finds that, while the plaintiff is entitled to chose not to conduct a job search while attending college, she was not disabled as defined by the Workers' Compensation Act and was not entitled to disability benefits after her March 19, 2002 release to return to work.
27. The Full Commission finds that the defendants are entitled to a credit for all temporary total disability benefits paid to the plaintiff after March 19, 2002. This credit shall be applied against the permanent partial disability compensation awarded to the plaintiff herein.
28. The Full Commission finds that this claim was not brought, prosecuted, or defended without reasonable ground, and that the plaintiff did not engage in unfounded *Page 10 
litigiousness. Thus, the Full Commission finds the assessment of fees or sanctions on such grounds to be unwarranted.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. The plaintiff sustained a compensable injury by accident to her left femur, pelvis, and head on June 6, 2001. N.C. Gen. Stat. § 97-2(6).
2. The defendants admitted that plaintiff sustained a compensable injury by accident and paid benefits and provided medical care to the plaintiff pursuant to a Form 60. However, a Form 60 does not carry a presumption of disability and plaintiff therefore has the burden of proving entitlement to disability benefits. Sims v. Charmes/Arby's RoastBeef, 142 N.C. App. 154, 542 S.E. 2d 277 (2001).
3. Disability under the Workers' Compensation Act is defined as an inability to earn wages in the same or other employment. N.C. Gen. Stat. § 97-2(9); Hilliard v. Apex Cabinet Co., 305 N.C. 593, 595,290 S.E.2d 682, 683 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages *Page 11 
less than her pre-injury wages. Demery v. Perdue Farms, Inc.,143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). The plaintiff in the present case has failed to prove disability under any of the criteria set forth in Russell. The evidence of record indicates that plaintiff was not disabled after March 19, 2002, the date she was released to return to work, except during the four weeks following the December 15, 2003 surgery. The plaintiff chose not to work and failed to cooperate with vocational rehabilitation. She testified that her plan prior to her injury was to attend school, work full time, and care for her child. Following the plaintiff's March 19, 2002 release by Dr. Murphy to return to work with no restrictions, the plaintiff could have continued with her plan to work while attending school and caring for her child. The Full Commission finds that, while the plaintiff is entitled to chose not to conduct a job search while attending college, she was not disabled as defined by the Workers' Compensation Act and was not entitled to disability benefits after her March 19, 2002 release to return to work. Russell, supra.
4. The plaintiff is entitled to temporary total disability benefits at the weekly rate of $213.34 from June 6, 2001, the date of the accident, through March 19, 2002, the date she was released to return to work. N.C. Gen. Stat. § 97-29. The plaintiff is also entitled to temporary total disability benefits at the weekly rate of $213.34 for the four weeks following her December 15, 2003 surgery, when she was kept out of work by Dr. Murphy. N.C. Gen. Stat. § 97-29.
5. The plaintiff is entitled to permanent partial disability compensation for the twenty-two and one-half percent (22 ½ %) rating assigned by Dr. Murphy to the plaintiff's left lower extremity, which yields $213.34 per week for 45 weeks (or a total of $9,600.30). N.C. Gen. Stat. § 97-31(15). *Page 12 
6. The plaintiff has also requested compensation for a two percent (2%) rating to the head, which the Full Commission finds to be unsupported by the evidence of record and is, thus, denied. N.C. Gen. Stat. § 97-31.
7. Plaintiff is entitled to the payment of medical expenses incurred for the treatment of the injuries she sustained to her left femur, left hip, left knee, or head, and any further treatment that tends to effect a cure, give relief, and/or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
8. The defendants are entitled to a credit for all temporary total disability benefits paid to the plaintiff after March 19, 2002. N.C. Gen. Stat. § 97-42. This credit shall be applied against the permanent partial disability compensation awarded to the plaintiff herein.Id.
9. The Full Commission finds that this claim was not brought, prosecuted, or defended without reasonable ground, and that the plaintiff did not engage in unfounded litigiousness. Thus, the Full Commission finds the assessment of fees or sanctions per N.C. Gen. Stat. § 97-88.1 to be unwarranted.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. The defendants shall pay to the plaintiff temporary total disability benefits at the weekly rate of $213.34 from June 6, 2001, the date of the accident, through March 19, 2002, the date she was released to return to work, subject to the attorney's fee provided herein. The defendants shall also pay to the plaintiff temporary total disability benefits at the weekly rate of $213.34 for the four weeks following her December 15, 2003 surgery, when she was kept out of *Page 13 
work by Dr. Murphy, subject to the attorney's fee provided herein. Because this compensation has accrued, it shall be paid to the plaintiff in a lump sum.
2. The defendants shall pay to the plaintiff permanent partial disability compensation for the twenty-two and one-half percent (22 ½ %) rating assigned by Dr. Murphy to the plaintiff's left lower extremity, which yields $213.34 per week for 45 weeks (or a total of $9,600.30), subject to the attorney's fee provided herein. Because this compensation has accrued, it shall be paid to the plaintiff in a lump sum.
3. The defendants shall make payment of medical expenses incurred for the treatment of the injuries the plaintiff sustained to her left femur, left hip, left knee, or head, and any further treatment that tends to effect a cure, give relief, and/or lessen the period of disability.
4 The defendants shall pay to the plaintiff's counsel a reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded to the plaintiff herein. The portion of such fee that is based upon compensation that has accrued shall be paid to the plaintiff's counsel in a lump sum; thereafter, the plaintiff's counsel shall receive every fourth check of compensation due the plaintiff.
5. The defendants are entitled to a credit for all temporary total disability benefits paid to the plaintiff after March 19, 2002. This credit shall be applied against the permanent partial disability compensation awarded to the plaintiff herein.
This 26th day of January 2007.
S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 14 
CONCURRING:
 S/________________ THOMAS J. BOLCH COMMISSIONER
 S/__________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 1